48 F.3d 1235
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 A. Cheryl BOYKIN, Petitioner,
v.
UNITED STATES POSTAL SERVICE, Respondent.
 No. 94-3357.
 United States Court of Appeals, Federal Circuit.
 Feb. 3, 1995.
 
 MSPB
 AFFIRMED.
 Before RICH, CLEVENGER and BRYSON, Circuit Judges.
 DECISION
 PER CURIAM.
 
 
 1
 Petitioner A. Cheryl Boykin challenges the decision of the Merit Systems Protection Board (Board) Docket Number CH-0752-94-0017-I-1, in which the Board upheld the action of the United States Postal Service removing Boykin from the position of EEO Counselor/Investigator at the Postal Service facility in Carol Stream, Illinois. We affirm.
 
 DISCUSSION
 
 2
 Boykin was removed for being absent without leave (AWOL) from March 30, 1993, through July 27, 1993; she was placed on AWOL status when she refused to accept her reassignment to the Carol Stream facility. An employee may be removed for refusing to accept a reassignment, as long as there is a legitimate management reason for reassigning the employee and the employee is given adequate notice of the reassignment. See Ramos v. FAA, 4 M.S.P.R. 388 (1980). The Board found that the Postal Service had a legitimate management purpose in reassigning Boykin--to complete the staffing of the Carol Stream facility pursuant to a Postal Service restructuring program. The Board also found that Boykin received adequate notice of her reassignment and refused to accept it.
 
 
 3
 Boykin has not disputed that she received notice of the reassignment and refused to accept it. Nor does she claim that the reassignment imposed any unusual hardship on her; she was reassigned to the same job she had previously held, and at a facility closer to her home. She resisted the reassignment because she did not want to continue in that position, but wanted a different job within the Postal Service. Although she raises several legal challenges to her reassignment and subsequent removal, none of them is persuasive.
 
 
 4
 Boykin suggests that the Postal Service did not have a legitimate management purpose in reassigning her, but there is nothing in the record to support that claim. Her contention that the Postal Service posted a vacancy notice for the Carol Stream position at the same time that it reassigned her is incorrect; Boykin was reassigned on March 8, 1993, and the vacancy notice did not issue until March 22, 1993, the date she was supposed to report to Carol Stream to assume her new duties. Moreover, because Boykin had previously informed her supervisor that she did not intend to report to work at Carol Stream, the issuance of a vacancy notice on the day that Boykin failed to report does not support an inference that the Postal Service reassigned Boykin to induce her to resign or for any other illegitimate reason.
 
 
 5
 Boykin argues that because the Postal Service was able to hire a person to fill the Carol Stream position after she refused to accept reassignment, the Postal Service must not have needed to reassign her and could not have been harmed by her refusal to accept reassignment. That argument is frivolous. The fact that the Postal Service hired another person in Boykin's place demonstrates that it had a genuine need to fill the position and supports its good faith in reassigning Boykin to the job.
 
 
 6
 Boykin also contends that she reasonably believed that her reassignment was improper because it occurred before the conclusion of Phase II of the Postal Service's restructuring program. Boykin, however, has failed to show that the restructuring program precluded the agency from directing reassignments; in fact, the agency introduced evidence before the Board that reassignments during the course of the program were specifically authorized. There is likewise no force to Boykin's complaint that she was not provided with sufficient written authority for her reassignment when she was reassigned. The Postal Service's authority to reassign employees is not encumbered by an obligation to provide reassigned employees with written evidence of that authority.
 
 
 7
 Boykin's assertion that she would have been disadvantaged in applying for new positions within the Postal Service if she had accepted her reassignment is neither accurate nor relevant. She argues that "unplaced" employees were given priority over "placed" employees in applying for new Postal Service jobs. Boykin, however, was "placed" as soon as the agency reassigned her. Her refusal to accept the reassignment neither prevented nor delayed her being "placed." In any event, Boykin's concern about her ability to find a new job within the Postal Service is not relevant to whether the agency had a legitimate management reason for reassigning her.
 
 
 8
 Finally, Boykin's argument that the Board erred in failing to mitigate her penalty is unpersuasive. Removal is an appropriate penalty for an employee who refuses to report for duty following reassignment; in fact, the Board has held that it will rarely order mitigation when an employee refuses to accept a legitimate reassignment. See Taylor v. Department of Health & Human Servs., 40 M.S.P.R. 106, 111-12, aff'd mem., 891 F.2d 299 (1989), cert. denied, 494 U.S. 1090 (1990). The Board did not abuse its discretion in determining that this case, involving an employee who was willfully absent without leave for nearly four months, was not an exceptional case in which mitigation of the penalty should be directed.